**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TAMARA M.

                                    Plaintiff,

            v.
                                                            3:19-CV-1138
ANDREW SAUL, COMMISSIONER OF                                (CFH)
SOCIAL SECURITY,

                                    Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration            CANDACE LAWRENCE, ESQ.
J.F.K. Federal Building, Rm. 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

    Plaintiff Tamara M.[1] brings this action pursuant to 42 U.S.C. § 405 (g) seeking

review of the decision by the Commissioner of the Social Security Administration

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

("Commissioner," "SSA," or "defendant") denying her application for disability insurance benefits. Dkt. No. 1. ("Compl.").[2] Plaintiff moves for a finding of disability, and the Commissioner cross moves for judgment on the pleadings.  Dkt. Nos. 11, 14.  With permission of the Court, plaintiff filed a reply brief, dkt. no. 15, and defendant filed a surreply, dkt. no. 17.  For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

On October 3, 2016, plaintiff protectively filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for supplemental security income. T at 217-231.[3]  The claim was denied on December 27, 2016.  Id. at 150.  Plaintiff filed a written request for a hearing.  Id. at 159.  On October 16, 2018, a hearing was held before Administrative Law Judge ("ALJ") David Romero, where plaintiff was represented by counsel.  Id. at 72-109.  On October 29, 2018, the ALJ issued a decision denying plaintiff's application.  Id. at 11-30.  Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's finding the final determination of the Commissioner.  Id. at 1-5.  Plaintiff commenced this action on September 13, 2019.  See Compl.

## II. Standards of Review

---

[2] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636 (c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73, N.D.N.Y. Local Rule 72.2 (b), and General Order 18. See Dkt. No. 7.

[3] The Court will cite the administrative transcript as "T [page number]."  The Court will cite the pagination that appears in the bottom right-hand corner of the administrative transcript.  Citations to the parties' submissions, however, will be to the pagination generated by the Court's filing system, ECF, which are located at the header of each page.

### A.  Substantial Evidence Standard

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since December 18, 2015, the alleged disability onset date.  See T at 16.  At step two, the ALJ found that plaintiff

5

had the following severe impairments: fibromyalgia, thoracic spine disorder, lumbar spine disorder, asthma, sarcoidosis, obstructive sleep apnea, posttraumatic stress disorder, depression, anxiety disorder, and morbid obesity.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 17.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she should avoid concentrated exposure to respiratory irritants. Occasional balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Never climb ropes, ladders or scaffolds.  Never exposed to high, exposed places or moving mechanical parts.  Occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions.  Can understand, remember and carry out simple instructions and make simple work[-]related decisions.  Can work at a consistent pace throughout the workday but not at a production rate where each task must be completed within a strict time deadline.  Can tolerate occasional interaction with coworkers and supervisors and the public.

T at 18.

At step four, the ALJ determined that plaintiff could not perform any past relevant work.  See T at 23.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 24.  Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date.  See id.

## IV.  Relevant Opinion Evidence[4]

---

[4] The record also includes Gilbert Jenouri, M.D.'s physical consultative examination.  T at 408-411.  The ALJ concluded that Dr. Jenouri "underestimate[s]" plaintiff's "exertional limitations in light of the updated

Dr. Brett Hartman, Psy.D. performed a consultative examination of plaintiff on August 20, 2014, two years before the alleged disability onset date.  T at 38-42.  As relevant here, Dr. Hartman concluded that plaintiff's attention and concentration "[a]ppeared to be mildly impaired.  She could do the counting without difficulty, yet made mistakes with the calculations and serial subtractions."  Id.  Her recent and remote memory skills also "[a]ppeared to be mildly impaired.  She could recall 4 out of 4 objects immediately and 2 of 4 after five minutes.  She could perform 4 digits forward and 3 backward."  Id.  Dr. Hartman concluded that plaintiff could "follow and understand simple directions," "perform simple tasks," "has mild difficulty in maintaining attention and concentration," and "mild to moderate difficulty maintaining a regular schedule." Id. at 40-42.  Dr. Hartman's prognosis of plaintiff was "[g]uarded given the multiple and significant nature of symptoms."  Id.  The ALJ accorded this opinion limited weight because the evaluation occurred "before the time period at issue" and is "not supported by the objective evidence in the record."  Id. at 18, 20.

Dr. Amanda Slowik, Psy.D. performed a psychological assessment of plaintiff on November 11, 2016.  T at 401-405.  Dr. Slowik concluded that plaintiff's attention and concentration were mild to moderately impaired "due to the claimant's difficulties with

---

orthopedic medical records [] and pain management records [].  However, the undersigned has given them [sic] some weight to Dr. Jenouri's opinion based on his programmatic expertise, and his opinion supports the overall conclusion that the claimant cannot exceed the sedentary exertional level of work." Id. at 19.  Dr. Jenouri does not opine as to plaintiff's time off-task or absences. Id. at 408-411.

Also included in the administrative transcript is an examination from Dr. Justine Magurno, M.D., who provided a physical consultative examination of plaintiff on August 27, 2014, two years before the onset date.  T at 31-35.  Dr. Magurno concluded that plaintiff "should avoid heights, ladders, and dangerous machinery."  Id. at 35.  She assessed marked limitations in lifting, carrying, bending, and right-sided pushing and pulling.  Id. She assessed mild limitations in prolonged sitting, standing, and walking.  Id.  She concluded that plaintiff "should avoid dust, fumes, and other known lung irritants."  Id.  The ALJ concluded that Dr. Magurno's opinion was entitled to limited weight because she "evaluated the claimant before the time period at issue" and her "opinion [is] not supported by the objective evidence in the record." Id.at 20.

math and distractibility secondary to physical pain which he [sic] rated as a 10/10 today." Id. at 403.  Dr. Slowik assessed plaintiff's recent and remote memory skills to be "moderately to markedly impaired" as she was able to recall three out of three objects immediately; zero of three objects after five minutes, and "[w]hen given hints about the categories to which the 3 objects belonged . . . , was not able to produce any of the objects"; could recite four digits forward and three digits backward; and "[i]nstructions on digit span backwards had to be repeated three times due to difficulties with recall." Id.  Dr. Slowik's medical source statement provides that plaintiff's ability to maintain attention and concentration is mild to moderately limited and her ability to maintain a regular schedule is moderately limited. Id.  Plaintiff's opined "[d]ifficulties are caused by distractibility secondary to pain, cognitive deficits, lack of motivation, anxiety, and depression." Id. at 404.  Her prognosis of plaintiff was "guarded." Id.  The ALJ assigned "significant weight" to this opinion. Id. at 19.

On December 22, 2016, nonexamining State Agency Medical Consultant Dr. S. Bhutwala, Ph.D. performed a review of plaintiff's medical record to assess her functional limitations relating to her mental health conditions. T at 125-27.  In relevant part, Dr. Bhutwala concluded that plaintiff would have moderate limitations in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, being punctual, responding to changes in a work settling, setting realistic goals or making plans independently of others, completing a normal workday and work week without interruptions from psychological symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. Id. at 126.  He concluded that

plaintiff retained the capacity to "perform the . . . basic demands of unskilled work." Id. at 127.  The ALJ accorded this opinion "significant weight." Id. at 19.

Plaintiff's treating physician, Dr. Andrea Hsue, M.D., completed a questionnaire assessing plaintiff's physical limitations due to fibromyalgia, depression, and back pain. T at 660.  Dr. Hsue indicated that these physical conditions, collectively, would cause plaintiff pain, fatigue, diminish concentration and work pace, and require rest at work. Id.  She further concluded that these symptoms would cause plaintiff to be off task for greater than 33% of the work day. Id.  The conditions would produce good days and bad days, leading to four or more missed work days per month. Id.  Dr. Hsue concluded that plaintiff could sit for six out of eight hours in a work day, should change position every 15 minutes, stand or walk for 30 minutes out of an eight-hour day, and could lift up to five pounds for up to a third of the day. Id. at 661.  Dr. Hsue indicated that her assessment represented the period of August 2016 to the present. Id.

Dr. Hsue separately completed an assessment of plaintiff's mental limitations.  T at 665.  As relevant here, she concluded that plaintiff had medium[5] limitation in maintaining attention and concentration, marked limitations in "maintain[ing] regular attendance without interruptions from psychological base[d] symptoms," and "preform[ing] [sic] activities within a schedule, [b]e punctual, preform[ing] [sic] at a consistent pace." Id.  She opined that plaintiff would be off task more than 33% of the day and absent more than three days per month. Id.  When asked the "diagnoses upon

---

[5]  The Questionnaire defines medium as "more than slight but less than a serious limitation.  The individual is still able to function satisfactorily for a certain portion of the day and/or perform the tasks satisfactorily on some of the occasions.  The approximate of loss would be more than 20% for the particular activity but less than 1/3 of the day." T at 665.  It defines marked as "a serious limitation in this area.  There is a substantial loss in the ability to effectively function.  [T]he loss would be greater than 33%." Id.

9

which the answers set forth hereinabove are based" and the "credible objective symptomology leading to the answers" in the questionnaire, Dr. Hsue stated, "fibromyalgia, chronic back pain, depression."  Id. The ALJ gave Dr. Hsue's assessments "some weight," rejecting "the 'marked' limitations Dr. Hsue identified, because they are not consistent with the treatment notes from her office."  Id. at 19.  Dr. Hsue indicated that her assessment applied from August 2016 to August 2018.

Susan Wenzinger, ANPBC completed a physical assessment of plaintiff on October 10, 2018.  T at 1044-45.  Ms. Wenzinger assessed plaintiff's chronic pain due to her cervical, thoracic, and lumbar spine.  Id. at 1044.  Ms. Wenzinger indicated that plaintiff's conditions cause pain and fatigue and that the conditions, pain from conditions, or side effects from related medication, diminish her concentration and work pace, requiring rest periods at work.  Id. at 1044.  Ms. Wenzinger concluded that her conditions would cause plaintiff to be off task between 20% and 33% of the day.  Id. She concluded that the conditions could produce good days and bad days, resulting in missing four days of work per month. Id.  Plaintiff could sit for approximately four hours of an eight-hour work day, change positions every 30 minutes, stand for four hours of an eight-hour day, lift over ten pounds occasionally (up to one-third of the day), and lift ten pounds or less frequently (up to two-thirds of the day).  Id. at 1045.  The ALJ assigned Ms. Wenzinger's opinion "some weight . . . because she provided the claimant with treatment" but did not fully adopt the sitting restrictions, finding them inconsistent with diagnostic imaging of the spine showing mild abnormalities.  Id. at 20.  He concluded that Ms. Wenzinger's medical source statement "supports the conclusion that the claimant could perform a range of sedentary work."  Id.  He also noted that plaintiff

reported an improvement in symptoms with "conservative treatment modalities" which "undermine[s]" Ms. Wenzinger's sitting assessment. Id. Ms. Wenzinger indicated that her answers on the questionnaire applied for the time period of July 10, 2018, to October 10, 2018, the date she completed the statement. Id. (citing Exh. 14F at 2, 9).

Responding to the hypothetical questions the ALJ posed, the Vocational Expert ("VE") testified that if an individual with the proposed RFC were off task more than 35% of the day and absent more than four days per month due to physical and mental impairments, such individual could not perform past work or other work. T at 106. The VE further testified further that if the individual was off task for ten percent or greater of the day, there would be no past work or other work. Id. at 106. Further, the VE testified that the individual would not be permitted more than one excused absence per month. Id.

## V.  Arguments

Plaintiff argues that the ALJ committed reversible error insofar as he (1) "misapprehends the nature" of plaintiff's fibromyalgia . . . , having rejected the treating source opinions and formed the Residual Functional Capacity . . . based on the lack of 'objective' findings and various negative clinical findings, despite the fact that such findings are never positive for FM patients"; (2) substituted his lay opinion for that of undisputed medical opinions, including his failure to include in the RFC limitations for being off task or absent "despite undisputed medical opinions that Plaintiff has impairments to staying on task, attendance, maintaining attention and concentration, maintaining a regular schedule, etc." and otherwise improperly weighed the medical

opinions; and (3) presented the Vocational Expert ("VE") an "incomplete and inaccurate" hypothetical, leading to "unreliable vocational testimony," rendering the Step Five finding unsupported by substantial evidence.  Dkt. No. 11 at 3.

Defendant argues that (1) declining to incorporate off-task time or absenteeism into plaintiff's RFC was proper and supported by record evidence; (2) the ALJ "applied the proper criteria" in assessing plaintiff's complaints of pain and in assessing the medical opinions; and (3) the step five finding is supported by substantial evidence. See Dkt. No. 14.

In reply, plaintiff (1) argues that defendant failed to address her argument that the ALJ's analysis of the opinion evidence does not meet the "overwhelmingly compelling standard" such that the nonexamining state agency physician's opinion could overcome those of examining medical providers, and, thus, has waived this argument; (2) argues that defendant mischaracterizes the consideration of pace and attendance limitations in the RFC, contending that "[i]t is not a matter of whether Defendant's examiners found the limitation to be work preclusive, it is a matter of whether 'moderate' can be defined as no limitation and it clearly cannot"; and (3) reargues that State agency psychologist Dr. Bhutwala's assessment cannot overcome the opinions of Dr. Hsue and Ms. Wenzinger as Dr. Bhutwala did not "identify evidence" to support his conclusion of "moderate limitation."  Dkt. No. 15-1.

In his sur-reply, defendant argues that (1) he addressed plaintiff's "overwhelmingly compelling standard" argument; (2) plaintiff mischaracterizes defendant's position as "[i]t was never the Commissioner's contention that a moderate limitation in a functional domain does not cause any work-related restrictions" but that a

"moderate limitation in the area of concentration, persistence, and pace does not preclude the performance of unskilled work – which is not only the type of work the ALJ found Plaintiff capable of performing, but also the category of jobs identified by the vocational expert"; and (3) the ALJ properly afforded significant weight to Dr. Bhutwala because he provided sufficient evidence to support his assessment.  See Dkt. No. 17-1.

## VI.  Discussion

### A. Applicable Law

#### 1.  Residual Functional Capacity

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8)).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the

determination is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).

### 2.  Treating Physician Rule

The Second Circuit has long recognized the "treating physician rule" set forth in 20 C.F.R. § 416.927(c), which provides that " 'the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" <u>Greek v. Colvin</u>, 802 F.3d 370,375 (2d Cir. 2015) (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008)); <u>see</u> <u>Halloran</u>, 362 F.3.d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .").

> [I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "<u>Burgess</u> factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion;  (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."

<u>Estrella v. Berryhill</u>, 925 F.3d 90, 95-96 (2d Cir. 2019) (citing <u>Selian v. Astrue</u>, 708 F.3d 409, 418 (2d Cir. 2003)(<u>per</u> <u>curium</u>)).  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." <u>Schaal v. Apfel</u>, 134 F.3d 496, 503, 505 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In <u>Estrella v. Berryhill</u>, the Second Circuit addressed an ALJ's failure to "explicitly" apply the "nonexclusive list" of regulatory factors set forth in <u>Burgess</u> when declining to

accord controlling weight to a treating physician's opinion. 925 F.3d at 96. The Second Circuit made clear that, such failure was "a procedural error," and that "remand is appropriate '[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]' Id. at 96 (quoting Selian v. Astrue, 708 F.3d at 419-20 and Halloran, 362 F.3d at 32)).  The Court held, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' [the court] will affirm." Id. (quoting Halloran, 362 F.3d at 32). This question is addressed by assessing "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating physician's] opinion." Id.; see also McGinnis v. Comm'r of Soc. Sec., No. 1:19-CV-0862 CJS, 2020 WL 5569797, at *8 (W.D.N.Y. Sept. 17, 2020) ("Put differently, an ALJ's failure to explicitly consider the Burgess factors when assigning less-than-controlling weight to a treating physician's opinion is a 'procedural error' that will require remand, unless the ALJ provides sufficiently good reasons for his weight assignment [such] that the court can conclude the substance of the treating physician rule was respected.") (citing Estrella, 925 F.3d at 96).

### 3.  Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." Greek, 802 F.3d at 375 (citing Burgess, 537 F.3d at 131).  In assessing a plaintiff's RFC, the ALJ may rely on

opinions from examining and non-examining State agency medical consultants because they are qualified experts in the field of social security disability. See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In addition to acceptable medical opinions, an ALJ may also consider the opinions of "other sources,"[6] such as medical providers who are not medical sources and nonmedical sources, but is "free to discount" such opinions "in favor of the objective findings of other medical doctors." Genier v. Astrue, 298 F. App'x 105, 108-198 (2d Cir. 2008) (summary order). However, an ALJ "should generally explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicators reasoning, when such opinions have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f).

## B.  Analysis

### 1. Off-Task & Absenteeism

---

[6]  Although the Social Security Administration revised the rules for assessing the kind of providers that qualify as acceptable medical sources – rendering certain nurses (Advanced Practice Registered Nurses) an acceptable medical source – plaintiff's claim was filed prior to the March 27, 2017, effective date. Thus, although Ms. Wenzinger appears to be an advanced practice nurse, the new rules do not apply.

Plaintiff argues that, in declining to include limitations in the RFC for time off off-task or maintaining appropriate attendance, the ALJ improperly (1) substituted his lay opinion for "undisputed" medical opinions finding moderate or greater limitations in her ability to stay on task and maintain appropriate levels of attendance; and (2) made "functional assessments based on the bare medical/clinical findings of record" and "without a supporting medical opinion."  Dkt. No. 11 at 14-16.  Plaintiff also argues that the ALJ erred in declining to accord Dr. Hsue's opinion controlling weight, declining to assign Ms. Wenzinger's opinion "greater weight," and in according substantial weight to Dr. Bhutwala's opinion.  Dkt. No. 11 at 18-23, 25.-26.

In contending that the limitations to staying on task and maintaining acceptable levels of attendance are "undisputed," plaintiff notes that (1) consultative examiner Dr. Hartman assessed moderate difficulty in maintaining a regular schedule; (2) consultative examiner Dr. Slowik found "up to moderate" impairment in maintaining attention and concentration and a moderate impairment in maintaining a regular schedule; (3) state agency medical consultant Dr. Bhutwala found moderate[7] limitations in performing activities within a schedule, maintaining regular attendance and punctuality, completing a work day and work week without interruptions from psychological symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; (4) treating physician Dr. Hsue concluded that plaintiff's impairments would cause plaintiff to be off task for more than 33% of the day and absent more than four days per month; and (5) treating nurse, Ms. Wenzinger,

[7]   In a footnote, plaintiff argues that Dr. Bhutwala's assessment finding moderate limitations "cannot constitute substantial evidence in support of an ALJ's RFC determination that a claimant can meet the demands of work" as it is "vague and non-specific."  Dkt. No. 11 at 16 n.1 (citing cases).

17

concluded that plaintiff's physical impairments would cause her to be off task more than 20% of the workday and absent more than four days per month. Dkt. No. 11 at 15-16. Due to these opinions, plaintiff proposes that the ALJ's assessment "does not rise to the level of 'overwhelming [sic] compelling' sufficient to overcome these undisputed opinions." Id.   Further, in arguing that the ALJ erroneously substituted his opinion as it relates to her ability to stay on task and maintain acceptable levels of attendance, plaintiff contends that his "only analysis of these Two Issues is his statement that the opinions of Dr. Hsue and NP Wenzi[n]ger are 'speculative and not supported by any objective clinical findings.'" Id. at 17 (quoting T at 20).  Plaintiff contends that there are "objective bases" for Dr. Hsue and Ms. Wenzinger's conclusions regarding time off-task and absenteeism as "the record is replete with complaints of severe, chronic pain throughout her body which also unquestionably impact the ability to stay on task and/or maintain regular attendance." Dkt. No. 11 at 17 (citing T at 362, 367, 371, 374, 546, 549, 585; 408, 581, 585, 638, 808, 833, 834, 874, 888, "etc.").

First, insofar as plaintiff argues that the ALJ formed an RFC absent a supporting medical opinion because the medical opinions regarding off-task/attendance were "uncontradicted," Dkt. No. 11 at 14-15 (quoting Giddings v. Astrue, 333 F. App'x 649, 542 (2d Cir. 2009) (summary order)), yet the ALJ failed to incorporate such limitations into the RFC, her reasoning is flawed.  The Court's review of the ALJ's decision and the record does not reveal that the ALJ substituted his lay opinion for undisputed medical evidence relating to limitations in work pace and attendance.  Although Dr. Hsue, Ms. Wenzinger, Dr. Slowik, Dr. Bhutwala and Dr. Hartman all concluded that plaintiff had some degree of limitation in the areas of concentration, persistence, pace and/or

18

attendance, these findings are not "undisputed" because they diverge on the question of severity.  Only Dr. Hsue and Ms. Wenzinger concluded that these limitations are greater than mild to moderate.  T at 609-10, 660-61, 1044-45.

Second, the ALJ did not set his lay opinion against medical opinions; rather, he declined to give controlling weight or great weight to the two opinions of record that found that plaintiff had marked limitations in the areas of staying on task and maintaining attendance, and instead relied on the other medical opinions of record. Dkt. No. 11 at 14-15.[8]  Because the Court finds that substantial evidence supports the ALJ's assignments of weight to the medical opinions, including the weight accorded to Dr. Hsue and Ms. Wenzinger -- the only two opinions concluding that plaintiff had marked limitations in the areas of staying on task and attendance – there is no error in his assessment.  The ALJ reviewed Dr. Hsue and Ms. Wenzinger's medical source statements and compared them to their treatment notes, along with the other medical opinions, in reaching his weight assessment.  T at 19-23. In searching the medical treatment notes – as neither Dr. Hsue nor Ms. Wenzinger included the support for their opined limitations in their medical source statements – the ALJ did not interpret raw medical data.   Instead, in finding several medical records indicating normal or less than severe findings, the ALJ reasonably concluded that Dr. Hsue and Ms. Wenzinger's

---

[8]   Plaintiff cites Wagner v. Sec'y of Health & Human Svcs., 906 F.2d 856, 861-82 (2d Cir. 1990), and other cases, arguing that the evidence was not "overwhelmingly compelling" for the ALJ to reject the "undisputed" medical opinions of record by failing to incorporate limitations to being off task or having an unacceptable amount of absences in the RFC. Dkt. No. 11 at 15.  In Wagner, the Second Circuit was referring to the treating physician's uncontradicted opinion and the ALJ's rejection of this opinion in the absence of any other medical evidence.  906 F.2d at 861-82. Here, Dr. Hsue and Ms. Wenzinger's opinions were contradicted insofar as the other medical opinions of record assessed mild or moderate limitations in these areas.  In declining to accord a higher level of weight to these opinions, the ALJ relied on other medical opinions, rather than a "circumstantial critique by non-physicians.").  Dkt. No. 11 at 14-15 (quoting Giddings, 333 F. App'x at 652).  Thus, the Court finds plaintiff's cited case law does not direct the Court to find otherwise.  Dkt. No. 11 at 14-15.

highly restrictive opinions were unsupported by their treatment notes, and, therefore, were speculative.  T at 20-23.  Although plaintiff correctly notes that most opinions of record indicated that plaintiff would have some limitations with staying off-task and attendance, as noted, Dr. Hsue is the only acceptable medical source to conclude that these limitations were above a moderate degree of restriction.

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. Halloran, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Dr. Hsue used two check box forms to assert that plaintiff's physical and mental limitations each would cause plaintiff to be off task for 33% of the work day and absent more than four days per month.  Although the forms requested Dr. Hsue to explain her basis for the restrictions opined, she merely referred to plaintiff's diagnoses without further explanation.  This Court has held that where treating physicians use check-box assessment forms that do not explain how they reached these limitations and the treatment notes do not support those limitations, the treating physicians' opinions were reasonably accorded less weight.  Kristen B. v. Comm'r of Soc. Sec., 5:20-CV-0032 (ML), 2021 WL 950509, at *9 (N.D.N.Y. Mar. 12, 2021) (citing Mix v. Astrue, 09-CV-0016, 2010 WL 2545775, at *5 (W.D.N.Y. June 8, 2010) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at

best.")); <u>Robert S. v. Comm'r of Soc. Sec.</u>, 3:18-CV-357 (ATB), 2019 WL 4463497, at *13 (N.D.N.Y. Sept. 18, 2019); <u>Caroline B. v. Comm'r of Soc. Sec.</u>, 3:18-CV-872 (ATB), 2018 WL 4609123, at *13 (N.D.N.Y. Sept. 25, 2018); <u>Camille v. Colvin</u>, 652 F.App'x 25, 27 (2d Cir. 2016) (summary order), <u>but</u> <u>see</u> <u>Elysia C. v. Comm'r of Soc. Sec.</u>, No. 1:19-CV-1632 (CFH), 2021 WL 677926, at *5 (N.D.N.Y. Feb. 22, 2021) ("[T]he Court notes that vagueness or lack of specificity in a treating physician's opinion, alone, is not a sufficient basis upon which to afford a treating physician's opinion less than controlling weight.) (citing <u>Collins v. Berryhill</u>, No. 17-CV-00467 (LJV), 2019 WL 2287787, at *4 (W.D.N.Y. May 28, 2019) ("[T]he fact that a physician left her opinion unexplained on a form does not mean that it is not 'well supported by medically acceptable clinical and laboratory diagnostic techniques and thus not entitled to controlling weight.'")).[9]

As defendant argues, Dr. Hsue's forms did not identify the "objective symptomology together with credible subjective symptomology" upon which she based her assessment.  Dkt. No. 14 at 10.  Instead, Dr. Hsue merely pointed to plaintiff's diagnoses.  In her mental assessment, Dr. Hsue opined plaintiff would be off task more than 33% of the day and miss more than four days of work per month due to her diagnoses of fibromyalgia, chronic back pain, and depression.  T at 666.  She provided that plaintiff's medications cause fatigue and somnolence.  <u>Id.</u>  However, fully absent from the statement is her specific clinical findings to support such marked limitations.  <u>Id.</u> Similarly, as to her very similar assessment of plaintiff's physical limitations -- for which, like in her assessment of plaintiff's mental limitations, she indicated she was responding

---

[9]  Here, the ALJ did not alone rely on the lack of specificity in Dr. Hsue's (and Ms. Wenzinger's) medical source statement.  Instead, he also relied on the fact that the significant limitations opined did not find support in the treatment notes.

regarding fibromyalgia, depression, and chronic back pain – Dr. Hsue did not provide the specific clinical support for these significant limitations. Id. at 660-61.

Plaintiff argues that the ALJ's "only analysis of these [t]wo [i]ssues [off-task and absenteeism] is his statement that the opinions of Dr. Hsue and NP Wenzinger are 'speculative and not supported by any objective clinical findings.'" Dkt. No. 11 at 16. This ignores the above-reviewed analysis wherein the ALJ reviewed and detailed Dr. Hsue's treatment notes and plaintiff's other medical notes, showing that her treatment notes do not provide support for her claims of marked limitations in the areas of being on-task or absences. See T at 19-29. Rather than substituting his own judgment, the ALJ's analysis indicates to the Court that the ALJ properly considered Dr. Hsue's opinions together with the other evidence of record. "There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter." Cristina M. v. Saul, 3:18-CV-0332 (CFH), 2019 WL 3321891, at *6 (citing Hanson v. Comm'r of Soc. Sec., 15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), Report-Recommendation adopted by 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

Plaintiff argues that the ALJ erred in concluding that Dr. Hsue and Ms. Wenzinger's medical source statements were speculative or unsupported by clinical evidence because medical determinations on "the limitations to various work-related functions caused by the claimant's medical impairments," including maintaining attention and concentration,

> are never made based on actual testing . . . for example, counsel has
> never seen a case where an RFC is determined based on having tested a

> claimant's ability to stand for 8 hours, maintain attention and concentration
> for 8 hours, etc. To the contrary, all functional assessments are
> estimations based on the overall available medical information.

Dkt. No. 11 at 17.  This argument is a red herring.  The ALJ is not requiring such a

heightened standard of Dr. Hsue's (or Ms. Wenzinger's) medical source statements.

Instead, the ALJ sought evidence within the "overall available medical information" that

supported the claim of marked limitations in those areas.  Id.  As Dr. Hsue did not

explain in the medical source statements (despite that question being asked of counsel

via the questionnaire form) the available medical information she relied on in concluding

that plaintiff would be off task 33% of the day due to mental and physical impairments

and absent more than four days per month, the ALJ reviewed the medical record and

reasonably concluded that it did not reveal objective medical evidence supporting such

significant limitations.  T at 20.

In a very similar vein, plaintiff further argues that Dr. Hsue and Ms. Wenzinger

"are medical experts who gave their professional opinion[s]" on plaintiff's off-

task/attendance limitations.  Dkt. No. 11 at 17.  "As such, their opinions are no more

speculative than the other opinions of record addressing the ability to sit, stand, walk,

need to change positions, lift, carry, etc."  Id.  The Court disagrees.  As detailed herein,

Dr. Hsue, and, as will be discussed in more detail below, Nurse Wenzinger, provided

two-page, check-box style medical source statements that did not point to evidence

supporting marked limitations in concentration, persistence, and pace.  Further, unlike

some other medical opinions in the record -- including the physical assessments plaintiff

references, where the opined limitations were based at least in part on plaintiff's

completion of tasks –  Dr. Hsue's statements and Ms. Wenzinger's statement did not

explain the evidence they relied upon in making these decisions.  <u>Compare</u> T at 660-61, 665-66 (Dr. Hsue) <u>and</u> T at 1044-45 (Ms. Wenzinger) <u>with</u> T at 401-405 (Dr. Slowik)[10]; T at 408-11 (Dr. Jenouri)[11], T at 31-35 (Dr. Magurno)[12], and T at 38-42 (Dr. Hartman).[13] Thus, the ALJ's decision to accord Dr. Hsue's opinion less than controlling weight is supported by substantial evidence.

The Court also finds that the ALJ committed no error in his assignment of "some weight" to Ms. Wenzinger's opinion.  As noted, the ALJ accorded "some weight" to Ms. Wenzinger's physical assessment because she "provided the claimant with treatment." T at 20.  Ms. Wenzinger indicated that plaintiff's "chronic pain – cervical, thoracic, lumbar spine" – would cause plaintiff to have good days and bad days, be off task more than 20% of the day, and absent four days per month.  <u>Id.</u> at 1044.  First, the ALJ was not required to accord Ms. Wenzinger's opinion controlling weight as she is not an acceptable medical source.  <u>Barnaby v. Comm'r of Soc. Sec.</u>, 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting <u>Genier</u>, 298 F. Appx. at 108 (summary order) ("[A] nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight' . . . and the weight attributed to [the opinion] was supported by the applicable regulatory factors.")).  Thus, it was within

---

[10]  Dr. Slowik reviewed plaintiff's history and mode of living and performed a full mental status examination.  T at 402-403.

[11]  Dr. Jenouri reviewed plaintiff's complaints, medical history, social history, medications, activities of daily living, and performed a complete physical examination, including general appearance/gait/station; musculoskeletal examination; neurological examination; examination of extremities and fine motor activities of plaintiff's hands.  T at 408-10.

[12]  Dr. Magurno examined plaintiff's appearance, and station and performed a physical examination of her entire body; performed a musculoskeletal examination involving measuring degrees of rotation and examination of joints; performed a neurologic examination testing reflexes, sensory deficits, and strength in extremities; tested fine motor activity of hands; and reviewed x-rays.  T at 31-34.

[13]  In her examination before Dr. Hartman, plaintiff performed various tests to gauge her memory, attention, and concentration, such as counting and recalling objects.  T at 38-42.

the ALJ's discretion to accord Ms. Wenzinger's opinion "some weight."  Second, substantial evidence supports the ALJ's decision to accord her medical source statement some weight as the restrictive findings were not consistent with the clinical findings of record, the consultative examinations, and some of plaintiff's reported activities.  Beyond noting that plaintiff had mild degenerative changes in her spine "per x-ray," Ms. Wenzinger did not point to medical records substantiating such severe limitations. Id. at 1044.  As the ALJ discussed, Ms. Wenzinger's opinion was conclusory.  She did not point to clinical support for her limitations, merely listing the fact that plaintiff experienced chronic back pain and degenerative changes. Id.  That both Dr. Hsue and Ms. Wenzinger reached similar but conclusory findings does not entitle either of them to greater weight – their consistency with each other does not equate to consistency with the overall medical treatment notes or the other well-supported medical opinions.  Moreover, for the reasons detailed above, Dr. Hsue's medical source statement lacks sufficient record support.  The ALJ carefully reviewed the medical record and could not find substantiation for these opined severe limitations to staying on task and attendance in either Dr. Hsue or Ms. Wenzinger's treatment notes.  T at 19-23.  In sum, rather than the ALJ substituting his own judgment for Dr. Hsue's or Ms. Wenzinger's medical opinions, the Court's review of the record demonstrates that the ALJ properly weighed Dr. Hsue's and Ms. Wenzinger's medical source statements.  Thus, remand is not required on this ground.

Substantial evidence also supports the ALJ's decision to assign "significant weight" to State Agency Medical Consultant Dr. Bhutwala's opinion.  In according this opinion significant weight, the ALJ acknowledged that Dr. Bhutwala is a mental health

specialist and that he "based his assessment on a review of the entire record available at the time of the initial determination[.]" T at 19.[14]  Pointing to Stacey v. Comm'r of Soc. Sec. Admin., plaintiff argues that Dr. Bhutwala is not entitled to significant weight under the factors set forth in 20 C.F.R. § 404.1527(c) as he is a non-examining consultant and his degree of explanation of his conclusion is limited.  Dkt. No. 11 at 18; 799 F. App'x 7, 10-11 (2d Cir. 2020) (summary order).  Stacey, an unpublished Second Circuit opinion, held that "unsupported opinion, offered by [a] psychologist[ ] who never so much as examined [Plaintiff], is little more than ipse dixit."  Stacey 799 F. App'x at 10-11.  Plaintiff then goes through the record, citing several records she contends support "problems with chronic fatigue, which would impact staying on task and/or maintaining regular attendance," "complaints of severe, chronic pain . . . which also unquestionably impact[s] the ability to stay on task and/or maintain regular attendance," "relieving factors," "significant issues of anxiety and depression with panic attacks which also impact staying on task and attendance," and "discharge[] from physical therapy due to excessive missed appointments, which also supports attendance limitations."  Dkt. No. 11 at 17.

Regardless of its non-precedential nature, dkt. no. 17-1 at 5-6, it does not appear to the undersigned that Stacey is necessarily inconsistent with Second Circuit's

---

[14]   Insofar as plaintiff cites to case law from outside of the Second Circuit and the Program Operations Manual System ("POMS"), an internal manual of the Social Security Administration, to argue that Dr. Bhutwala's opinion cannot suffice to amount to substantial evidence to support the ALJ's RFC, dkt. no. 11 at 21 (citing Carver v. Colvin, 600 F. App'x 616, 619 (10th Cir. 2015); Parker v. Berryhill, No. 16-C-01182-PAB, 2018 WL 4520151, at *4 (D. Co. Sept. 21, 2018); Milner v. Berryhill, No. CV 16-CV-1050 GJF, 2018 WL 461095, at *10 (D.N.M. Jan. 18, 2018)), "POMS guidelines have no legal force and do not bind the Commissioner in making his decision."  Pavia v. Astrue, 5:10-CV-818 (GTS/DEP), 2012 WL 4449859, at *12 (N.D.N.Y. Aug. 20, 2012) (citing Tejada v. Apfel, 167 F.3d 770, 775 (2d Cir. 1991) and Schweiker v. Hansen, 450 U.S. 785, 789 (1981)).  Further, for the reasons discussed within this Memorandum-Decision & Order, the Court finds that substantial evidence otherwise supports the ALJ's determination to accord Dr. Bhutwala's opinion substantial weight.

general, well-settled rule that "[t]he report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."  Frye, 485 F. App'x at 487 (citing 20 C.F.R. § 416.927(e)(2)(i). In Stacey, the Second Circuit found that the opinion of the state agency psychiatric consultant was unsupported, and, therefore, not sufficient to outweigh the treating source opinions.  Stacey, 799 F. App'x 7 at 10. The Court held that the state agency psychologists' conclusions that the claimant could concentrate for two hour blocks of time lacked a citation to any supporting evidence and "appear[ed] to be a wholly arbitrary benchmark invented by the agency psychologists."  Id. at 11.  Contrary to plaintiff's argument, Dr. Bhutwala's conclusions – although they could be more robust – are not "invented"; rather, the source of his reliance is clear from his statement: Dr. Slowik's opinion and the medical records.  T at 127.  Dr. Bhutwala explicitly pointed to the medical records and assessments he relied on in making his determination.  Id. To the extent that plaintiff highlights certain medical records that she concludes supports greater degrees of limitation than those opined by Dr. Bhutwala or Dr. Slowik, the standard is not whether an independent review of the record could reveal substantial evidence supporting a finding of disability; rather, whether substantial evidence supports the ALJ's conclusion. See, e.g., Bonet ex rel. T.B. v. Colvin, 523 F. Appx. 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question," instead the question to be answered by the Court is "whether substantial evidence supports the ALJ's decision.").

Insofar as plaintiff argues that Dr. Bhutwala cannot constitute a contrary medical opinion because he is a psychologist who "does not have the expertise to opine on

functional limitations caused by Plaintiff's physical impairments," Dr. Bhutwala has the

expertise to assess limitations on concentration, persistence, and pace, which is what

he did.  Further, Dr. Bhutwala based his opinion on the findings of consultative examiner

Dr. Slowik and a review of the entire medical record.  Accordingly, the undersigned finds

the ALJ committed no error in giving substantial weight to this opinion.

Next, in a footnote, plaintiff points to Dr. Slowik's conclusion that "Plaintiff's

impairments would interfere with the ability to function on a regular basis"; "[t]hus," she

argues, "these opinions do not provide substantial support for the ALJ's RFC and, to the

contrary, substantiate the need for limitations in staying on task and/or attendance."

Dkt. No. 11 at 16 n.1.  Dr. Slowik's conclusion that plaintiff's impairments would interfere

with plaintiff's ability to function on a regular basis is not contrary to the ALJ's RFC

assessment as Dr. Slowik did not conclude that any of plaintiff's impairments would

markedly interfere with plaintiff's ability to function on a regular basis; rather, she merely

indicated that they would interfere.  In explicitly concluding that plaintiff had only mild to

moderate limitations in the areas of concentration, persistence, and pace, the Court can

infer that Dr. Slowik concluded that the "interferences" would not rise to a work-

preclusive level.  T at 403.  The Court therefore concludes that Dr. Slowik's statement

that plaintiff's mental impairments would interfere with her ability to function on a regular

basis is not inconsistent with her conclusion that plaintiff had mild to moderate

limitations in concentration, persistence, and pace; her overall assessment; or the ALJ's

RFC finding.

To the extent that plaintiff argues that ALJ reached an RFC in absence of a

medical opinion because he failed to incorporate limitations into the RFC for being off-

task/attendance, despite the medical opinions all finding some limitation in these areas, this argument also fails.  Dkt. No. 11 at 15, 17.  The ALJ's decision makes clear that in reaching his RFC determination he relied on Dr. Bhutwala, Dr. Slowik, and Dr. Jenouri's opinions – all of whom are competent medical experts.  Although Dr. Hsue, Ms. Wenzinger, Dr. Bhutwala, and Dr. Slowik all concluded that plaintiff would have limitations in staying on-task and/or maintaining appropriate levels of attendance, only Dr. Hsue and Ms. Wenzinger opined that plaintiff would have more than moderate limitations in these areas.  Dr. Slowik concluded that plaintiff would have "mild to moderate" limitations in staying on task, and Dr. Bhutwala, who based his assessment on Dr. Slowik's consultative examination, concluded there would be moderate limitations. The ALJ limited plaintiff to simple, sedentary work that is not at a production rate, with the ability to understand, remember, and carry out simple instructions and make simple work- related decisions. T at 18.

By limiting plaintiff to simple work requiring only the ability to understand, remember, and carry out simple instructions and decisions and not performing at a production rate, the ALJ incorporated into the RFC the mild-to-moderate limitations that were supported by the record and Dr. Bhutwala's and Dr. Slowik's assessments. "Courts have observed that '[t]here is significant case law indicating that the ALJ's limitation of [a p]laintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for [his or] her limitations for performing activities within a schedule and maintaining regular attendance.'" Andrea N. v. Saul, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020) (quoting Matta v. Astrue, 508 F. App'x. 53, 55 (2d Cir. 2013) (summary order) ("[t]he ALJ found that [the]

29

plaintiff had moderate difficulties in concentration, persistence and pace and moderate

difficulties in social functioning that limit [him] to simple, routine, low-stress, and

unskilled tasks, which involve no more than minimal contact with co-workers,

supervisors and the general public.") (additional citations omitted)).  Indeed, this Court

has held that moderate limitations in these areas are not necessarily inconsistent with

simple, unskilled work that is not at a production pace.  See, e.g., Andrea N., 2020 WL

1140512, at *4 (finding that the ALJ properly incorporated the plaintiff's at-most

moderate limitations in maintaining work pace and a regular schedule by limiting the

plaintiff to low-stress, goal-oriented jobs, rather than production-pace work; simple,

repetitive instructions; and occasional contact with co-workers, supervisors, and the

public); Melisa G. v. Berryhill, 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y.

June 17, 2019) ("[M]oderate limitations are not prohibitive of performing unskilled

work.") (citing Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) and Lowry v. Comm'r

of Soc. Sec., 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16,

2017)); see also Nesevitch v. Colvin, No. 3:15-CV-935, 2016 WL 5717270, at *16

(N.D.N.Y. Sept. 30, 2016) (finding that mild to moderate limitations in concentration,

persistence, or pace not inconsistent with RFC limiting the plaintiff to work involving

simple, low-stress tasks and instructions with low-contact).  Thus, contrary to plaintiff's

argument that the ALJ "fail[ed] to include any limitations to being off task and/or

attendance," dkt. no. 11 at 15, the ALJ merely declined to include limitations to support

the marked limitations Dr. Hsue and Ms. Wenzinger opined as he concluded that such

limitations were not supported by the medical record.  As the Court finds that substantial

evidence supports the ALJ's assignments of weight, it also finds that in declining to

incorporate greater restrictions for mild-to-moderate limitations in staying off-task and/or attendance, the ALJ committed no error.

Thus, the Court finds that the ALJ did not reach an RFC in absence of a medical opinion, did not substitute his lay judgment for that of a medical opinion, and that his weighing of the medical opinions – particularly the assessments of Dr. Hsue, Ms. Wenzinger, and Dr. Bhutwala – is supported by substantial evidence.  Therefore, plaintiff fails to demonstrate cause for remand with these arguments.

### 2. Fibromyalgia Assessment

Plaintiff contends that the ALJ "misapprehends" her fibromyalgia by rejecting the opinions of treating medical providers and relying on "the lack of 'objective' findings and various negative clinical findings," even though such findings are "never positive for FM patients[.]"  Dkt. No. 11 at 3.  Plaintiff contends further that the negative clinical findings the ALJ cites are irrelevant and he was instead to rely on "the intensity and severity of the pain," plaintiff's daily activities, location/duration/frequency of pain, precipitating/ aggravating factors, type of medication, other treatment, other measures for pain relief. Id. at 24.  Plaintiff further contends that the ALJ's assessment that plaintiff's conditions improved "ignores . . . the fluctuating nature of FM . . . and is 'cherry picking' the record" as "despite periods of time when her condition improved, there were equal or more times her condition worsened and the overall medical evidence evidences chronic severe pain and with severe average pain levels."  Id. at 24-26.  The Court disagrees and concludes that the ALJ committed no reversible error in his review of plaintiff's fibromyalgia.

It is well-settled, as plaintiff cites, that there are no objective tests for fibromyalgia. Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003). Further, fibromyalgia is "not per se disabling." Tanya W. v. Berryhill, No. 3:17-CV-0624 (CFH), 2019 WL 315057, at *6 (N.D.N.Y. Jan. 22, 2019) (citing Prince v. Astrue, 514 F. App'x 18, 20 (2d Cir. 2013) (summary order) and quoting Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order)). In assessing whether a claimant's fibromyalgia causes limitations that need to be incorporated into the RFC, an ALJ may not consider only objective evidence or the absence of objective evidence of fibromyalgia. See SSR 12-2p, SSR 12-2P (S.S.A.), 2012 WL 3104869 (July 25, 2012). However, " as SSR 12-2p sets forth, objective evidence is needed to establish the presence of a medically-determinable impairment, and, in the case of fibromyalgia, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." Anysha M. v. Comm'r of Soc. Sec., No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *5 (N.D.N.Y. Apr. 23, 2020). "Moreover, with respect to pain, the Second Circuit has explained that 'disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" Kenyon v. Comm'r of Soc. Sec., No. 5:16-CV-0260 (WBC), 2017 WL 2345692, at *8 (N.D.N.Y. May 30, 2017) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)).

The Court's review reveals that the ALJ did not rely solely on a lack of objective findings in concluding that plaintiff's fibromyalgia and related limitations were nondisabling. "When, as in this case, a plaintiff alleges pain that exceeds the

objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the claimant's functional capabilities." Melissa S. v. Comm'r of Soc. Sec., No. 1:17-CV-995 (ATB), 2019 WL 186643, at *8 (N.D.N.Y. Jan. 14, 2019) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(v), 416.929(c)(3)(i)(v) (additional citation omitted).

After finding plaintiff's fibromyalgia to be a severe impairment, the ALJ noted that despite having certain tender points, plaintiff demonstrated that she was able to complete many physical tasks in the clinical setting, which fairly suggests she was not as physically limited as she opined.  T at 21.  The ALJ explicitly discussed rheumatology records wherein plaintiff demonstrated tender points "along the costochrondal region and spine, she had no synovitis or tenderness of the hands or wrists, good grip strength, normal movement in the upper and lower extremities, good range of motion of the cervical spine, no effusion of the knees bilaterally, no synovitis or tenderness of the ankles or MTPs, excellent strength in her upper and lower extremities, and normal gait." Id.  Similarly, although evidencing areas of muscle spasm and tenderness in the left scapula and cervical region in her May 20, 2016, examination with Dr. Hsue, plaintiff had normal gait, range of motion, stability, muscle strength and tone, neurologic reflexes that were +2 and symmetric, no sensory loss, and normal coordination.  Id.

The ALJ also reviewed progress notes showing normal gait, normal range of motion in the cervical, thoracic, and lumbar spine, and no edema.  T at 21.  The ALJ then pointed to plaintiff's normal neurologic examination.  Id.  Additionally, he reviewed plaintiff's consultive examination before Dr. Jenouri where plaintiff demonstrated tender

points at the shoulders and lumbar area but normal gait, no use of assistive devices, stable and nontender joints, 5/5 strength In the upper and lower extremities, no muscle atrophy, in-tact hand and finger dexterity, and 5/5 bilateral grip strength.  Id.  The ALJ also documented that his review of "[e]mergency room records and progress notes indicated that the claimant's musculoskeletal and neurological evaluations were normal."  Id.  He also noted plaintiff's denial of "back pain, neck pain, joint pain, muscle pain, and decreased range of motion."  Id. (citing B17F at 12).  The ALJ reviewed pulmonology and pain management records which "confirmed that she denied experiencing any musculoskeletal or neurological symptoms."  Id.

The ALJ considered the longitudinal evidence of record, including plaintiff's complaints (or reported absence of complaints) of pain.  He further considered her reported activities, and level of treatment sought. T at 21.  He concluded that plaintiff's "allegations of disabling pain" to be "not fully consistent with the record."  Id. at 25.   The ALJ noted that, despite plaintiff's claims of significant physical limitations, she engaged in conservative treatment of joint and musculoskeletal symptoms.  Id. at 22.  He noted that plaintiff was discharged from physical therapy for failing to comply with their attendance policy, epidural injections "provided the claimant with relief," and her "musculoskeletal symptoms and muscle spasms were improving with noted decrease in pain levels." Id. at 22.  Further, he reviewed her activities of daily living, noting that although plaintiff "reported that she engages in no activities, the evidence in the record showed that the claimant traveled to New York for vacation," "was engaging in more community activities and attending karaoke," "lifted a heavy computer desk," and "cared for her dog."  Id. at 23.  The ALJ noted that plaintiff sought treatment "for widespread

pain, fatigue, and other symptoms that have been attributable to fibromyalgia." Id. at 21 (citing Exh b13F at 5).   He noted further that "most" of her complaints of pain "have focused on her back" and X-rays of plaintiff's lumbar spine "showed mild diffuse spinal canal lipomutosis, and mild lumbar dextrocurvature."  Id. at 21.  Further, her thoracic spine x-ray "showed mild degenerative disc changes."  Id.

Rather than solely rely on objective findings or a lack there of, his consideration of these examination findings and plaintiff's symptomology was a part of his overall analysis of this condition.  The ALJ did not focus solely on an absence of objective findings; rather, the ALJ reviewed the "longitudinal record."  Tamara B. v. Comm'r of Soc. Sec., No. 3:18-CV-0422 (TWD), 2019 WL 2410798, at *10 (N.D.N.Y. June 7, 2019) (finding that the ALJ did not err insofar as he "noted a lack of clinical and objective findings" where "he did not rely solely on this aspect of the record in finding Plaintiff was not disabled or in determining her RFC" but "pointed to a combination of a lack of evidence supporting Plaintiff's allegations of disabling symptoms as well as inconsistencies between the treating source opinions and Plaintiff's reported activities."). The ALJ concluded that the above records "support the conclusion that the claimant is capable of a range of sedentary work activity, and contradict the assessment[s] of Dr. Magurno and Hsue."  T at 21.  As the ALJ focused not on the absence of clinical findings, but on the plaintiff's ability to complete the majority of these tasks without limitation or reports of disabling pain, the ALJ's assessment of her fibromyalgia as nondisabling is proper.  The ALJ carefully detailed plaintiff's complaints and reviewed them alongside her medical records and daily activities; therefore, substantial evidence supports the ALJ's review of plaintiff's fibromyalgia.

### 3. Step Five Determination

Plaintiff argues that the ALJ's Step Five finding is unsupported by substantial evidence because the ALJ presented the VE with an "incomplete and inaccurate hypothetical that did not account for all of Plaintiff's exertional and non-exertional impairments." Dkt. No. 11 at 27. Although the claimant has the general burden to prove that he or she has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2017) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] ... [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas, 712 F.2d at 1553-54 and citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

As discussed above, the Court finds that the ALJ's analysis regarding the evidence and the resulting RFC are supported by substantial evidence. The ALJ's decision includes adequate explanation for his findings on plaintiff's alleged limitations, and plaintiff has not established further limitations than those included in the RFC.

Therefore, the Court finds that the ALJ did not err in relying on the VE testimony which was in response to a hypothetical question reflecting the ALJ's RFC determination. Therefore, remand is not required on this basis.

### VII. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is HEREBY

**ORDERED**, that plaintiff's motion for judgment on the pleadings (dkt. no. 11) is **DENIED**, and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (dkt. no. 14) is **GRANTED**, and it is further

**ORDERED**, that the determination of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: March 30, 2021
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge